```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

AKEEM MUHAMMAD,[1]

        Plaintiff,

vs.                                Case No.  2:07-cv-740-FtM-36DNF

GEORGE SAPP; D.A. COLON; R.J. POCCIA; WENDEL WHITEHURST; JAMES UPCHURCH; JAMES MCDONOUGH,

        Defendants.
_____

## OPINION AND ORDER

### I. Status

This matter comes before the Court upon review of Defendants Poccia and Colon's Motion for Summary Judgment (Doc. #105, Mot. SJ), filed March 13, 2009.  In support of their motion, Defendants attach the following documents: Affidavit of Christine England, grievance coordinator (Doc. #105-1, Aff. England), and copies of relevant grievances submitted by Plaintiff; Affidavit of Lieutenant D.A. Colon (Doc. #105-2, Aff. Colon); Affidavit of Major Paul Smich (Doc. #105-3, Aff. Smich); portions of Plaintiff's deposition (Doc. #105-4, Pl. Depo) transcript; Affidavit of Doctor Robert Hemphill (Doc. #105-5, Aff. Hemphill); Affidavit of Doctor Muhammad Akhtair (Doc. #105-6, Aff. Akhtar); Affidavit of Sergeant Wise (Doc. #105-

---

[1]As the Court previously noted, a search on the Department of Corrections' website reveals that Plaintiff (inmate number 706732) has other aliases including: Akeem Waheed Muhammad, Muhammed Muhammed Abdul, Richard Michael Rinaldo, and Muhammad Abdul Muhammad.

7, Aff. Wise); Affidavit of Poccia (Doc. #105-8, Aff. Poccia); Affidavit of Sergeant Malicki (Doc. #105-9, Aff. Malicki); and Affidavit of Nurse D. Kovach (Doc. #105-10, Aff. Kovach). Included in the affidavits are copies of the incident reports concerning the subject of the Complaint *sub judice*, "use-of-force" forms, and Plaintiff's applicable medical records.

On March 25, 2010, the Court directed Plaintiff to file his response to the Defendants' summary judgment motion on or before April 8, 2010. Doc. #160. In Response to the Court's Order, Plaintiff filed a motion for reconsideration, which the Court granted and directed the Clerk of Court to file Plaintiff's "Preliminary Response in Opposition to the Motions for Summary Judgment" (Doc. #165, Response), which was located in the Court's internal files. In support of his Response, Plaintiff attaches the following exhibits: Disciplinary Log Report dated October 20, 2005 (Pl's Exhs. 1-2); Affidavit of Lieutenant Robert Mercado (Pl's Exh. B) previously submitted in the Eighth Judicial Circuit; Affidavit of inmate Walter Cheney (Pl's Exh. C); Affidavit of inmate Shaun DeBoard (Pl's Exh. D); and Affidavit of inmate Tyrone Hutchinson (Pl's Exh. E).[2] This matter is ripe for review.

---

[2]At the outset the Court notes that Plaintiff's Response contains extraneous factual allegations and exhibits that are unrelated to the limited issue currently before this Court. Any unrelated facts or claims that Plaintiff raises for the first time in his Response to the Defendants' Motion for Summary Judgment are matters not properly before this Court and the Court will not
(continued...)

**II. Procedural History**

Akeem Muhammad, a *pro se* plaintiff who is an inmate incarcerated within the Florida Department of Corrections, initiated this action by filing a Civil Rights Complaint pursuant to 42 U.S.C. § 1983.[3] On December 10, 2008, the Court entered an Order (Doc. #79, Order) granting in part and denying in part the Defendants' motion to dismiss. *See generally* Order.[4] In the Order, the Court first determined that the operative Complaint was Plaintiff's initial Complaint and then directed that the Clerk of Court strike the other complaints. *Id.* at 1-5. The Court next ruled that the Complaint failed to state a claim stemming from the Department of Corrections' shave policy under either the First Amendment or the Religious Land Use Institutional Persons Act. *See* Order; Supp. Order. Additionally, the Court dismissed Plaintiff's Eighth Amendment claims to the extent that prison officials used force to gain Plaintiff's compliance with the valid prison rules. *Id.* at 16-17. Thus, only Plaintiff's Eighth Amendment claim against Defendants Colon and Poccia, in their individual

---

[2](...continued)
address such matters. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-1315 (11th Cir. 2004).

[3]Plaintiff is not proceeding *in forma pauperis* in this action because he was prohibited from doing so under the "three strikes rule." Thus, Plaintiff paid the filing fee in this case.

[4]The Court entered a Supplemental Order (Doc. #159, Supp. Order) to clarify that its December 2008 Order also addressed Plaintiff's claims under the Religious Land Use Institutional Persons Act.

capacities, stemming from the use of chemical agents on Plaintiff on October 20, 2005, remains pending before this Court.

According to the Complaint, on October 20, 2005, at 9 a.m. Defendant Colon told Plaintiff, "you know what time it is," and proceeded to use "three large cans of chemical agents on Plaintiff" because of Plaintiff's refusal to comply with the Department of Corrections' shave policy. Complaint at 18. Plaintiff claims that after he was sprayed with chemical agents, Defendant Colon only provided him with "extremely" hot water to wash the chemical agents off his body. *Id.* at 19. Again, that same day, at 7 p.m., Plaintiff alleges that Defendant Poccia told Plaintiff he would be sprayed to "teach him a lesson about refus[]ing to voluntarily shave" and applied chemical agents on him for over a thirty minute period while "taunting" him. *Id.* Plaintiff submits that he was again only provided with "extremely" hot water making it "impossible" to rinse the chemical agents off his body. *Id.* Plaintiff states that Poccia then returned him back to the contaminated cell. *Id.* at 20. Plaintiff maintains that he did nothing to warrant the application of chemical agents. *Id.*

Defendants Colon and Poccia move for summary judgment. *See* Mot. SJ. In pertinent part, Defendants first argue that Plaintiff failed to exhaust his administrative remedies. *Id.* at 4-5. The Court is unpersuaded by Defendants' argument and for the reasons set forth herein finds that Plaintiff *did* exhaust his

administrative remedies with regard to his excessive use of force claim stemming from the use of chemical agents on two occasions on October 20, 2005.  See Aff. England at 2-3 (describing inmate grievances concerning morning spray informal #510-5404, formal #0511-510-081, appeal # 05-6-33044; and evening spray informal #510-5403, formal #0511-510-080, appeal # 05-6-33045).

Turning to the merits of the claim, Defendants Colon and Poccia submit that the chemical agents that Defendants applied to Plaintiff did not amount to excessive force.  Instead, Defendants maintain and submit supporting evidence that the use of force was necessary to restore order based on Plaintiff's disruptive and destructive actions.  *Id.* at 7-10.  Defendants alternatively argue that they are entitled to qualified immunity.  *Id.* at 11.  For the reasons herein the Court finds the Defendants are entitled to the entry of summary judgment in their favor.

### III.  Exhaustion of Administrative Remedies

Defendants first submit that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act.  *Id.* at 4.  Defendants argue that "none of the [Plaintiff's] grievances addressed the constitutional violations that Plaintiff has asserted against Colon and Poccia, *sub judice*."  *Id.* at 5.  In support of their argument, Defendants attach the affidavit of Christine England, grievance coordinator for the Florida Department of Corrections, and inmate grievances Plaintiff submitted regarding

various incidents and some concerning the October 20, 2005 incidents. *Id.* In the affidavit, England reviews the relevant grievances that Plaintiff submitted and points out that Plaintiff "did not mention Colon or Poccia in [the] grievance[s]." Aff. England at 3. In Response, Plaintiff contends that he exhausted the administrative remedies that were available to him. Response at 20-22.

"[T]he PLRA exhaustion requirement requires full and proper exhaustion." *See Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006)(explaining that an inmate did not properly exhaust administrative remedies when a jail dismissed a grievance because the inmate had missed the deadlines set up by the jail's grievance procedures). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define boundaries of proper exhaustion." *Jones v. Bock*, 127 S. Ct. 910, 923 (2007).

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 126 S. Ct. at 2382; *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). Inmates, however, "are not required to specially plead or demonstrate exhaustion in their

-6-

complaints." *Jones*, 127 S. Ct. at 921. Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense that defendant must plead and prove. *Id.* at 914. The claim that an inmate failed to exhaust the administrative remedies "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008)(citations omitted).

Pursuant to the Florida Administrative Code Chapter 33-103, Plaintiff is required to exhaust all available administrative remedies before pursuing a civil rights action. Specifically, the Florida Department of Corrections provides a three-step grievance procedure. First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint. Fla. Admin. Code 33-103.005-.007. Except in certain circumstances, when an inmate files a formal grievance, he or she must attach the informal grievance and the response received to the informal grievance. *Id.* at 33-103.006(2)(h). If the inmate's issue is not resolved by utilizing the formal grievance at the institutional level, the inmate must file an appeal to the Office of the Secretary of the Florida Department of Corrections. *Id.* at 33-103.007. Additionally, an inmate may bypass the filing of an informal and formal grievance and file emergency grievances, grievances of reprisal, and grievances of a sensitive nature directly with the Office of the Secretary. *Id.* at 33-103.007(6).

Upon review of the affidavit submitted by Defendants from Christine England, attached inmate grievances labeled exhibits 1A, 1B, 1C, and Plaintiff's Response, the Court finds Plaintiff has exhausted his administrative remedies with respect to the claim currently pending before the Court. In the aforementioned grievances, Plaintiff complains about the use of chemical agents on him on the morning and evening of October 20, 2005. *See* Exhs. 1A, 1B. Plaintiff further complains that he was only provided with hot water to wash off the chemical agents. Exh. 1B. Moreover, Plaintiff proceeded through the three stages of the Florida Department of Corrections' grievance process as evidenced by the grievances. To the extent Defendants argue that Plaintiff should have specifically named Poccia and Colon in the grievances to properly exhaust his administrative remedies, *see* Aff. England at 3, Defendants do not cite to any applicable portion of the grievance procedures set forth in the Florida Administrative Code that require an inmate to specifically name the individuals in the grievances. *See Jones*, 127 S. Ct. at 921. As stated above, under the PLRA an inmate is not required to specifically identify each defendant in the grievance in order to properly exhaust his administrative remedies. The purpose of the grievance is to apprise the institution of the inmate's issue and allow an opportunity for the institution to investigate and correct the issue, if deemed appropriate. With this in mind, however, the

Court notes that Plaintiff never alleged on these inmate grievances that chemical agents were sprayed on him on October 20, 2005, for his failure to comply with the Department of Corrections' shaving rules. Instead, Plaintiff generally alleges that "security forces launched an assault and attack" on him as part of the government's conspiracy to turn Muslims into infidels. See Aff. England at 2-3. Based on a review of Defendants' argument and the grievances, the Court finds that Plaintiff has properly exhausted his administrative remedies with respect to his Eighth Amendment claim stemming from the use of chemical agents, and will now turn to the merits of the case.

### IV. Applicable Law

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp.*

*v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)). Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving

party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." *Beard*, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)(stating that plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.

1995)(finding that inmates failure to produce "nothing, beyond his own conclusory allegations" to demonstrate defendant's actions "motivated by retaliatory animus" warrants grant of summary judgment in favor of defendant). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

As previously stated, Plaintiff claims a violation of his Eighth Amendment rights stemming from prison guards' application of chemical agents on two occasions in October 2005. *See* Complaint at 18-19. Under the Eighth Amendment, it is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the core question is whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)(citing *Whitley*, 475 U.S. at 320-321 (other citations omitted)); *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the

relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). Indeed, "[t]hat deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 322; *See also Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

## V. Undisputed Facts and Conclusions of Law

Here, the uncontradicted evidence of record establishes that on both occasions where chemical agents were used on Plaintiff on October 20, 2005, Plaintiff was creating a disturbance and refused to stop his disruptive behavior. Accordingly, Defendants resorted to the use of chemical spray to gain Plaintiff's compliance.

### A. Morning Application of Chemical Agents

It is undisputed that Defendant Colon applied chemical agents on Plaintiff on October 20, 2005 at 9:00 a.m. Complaint at 19; Mot. SJ at 7. In contradiction to Plaintiff's conclusory allegations that he did nothing to warrant the application of chemical agents, Defendant Colon's affidavit and incident report evidences that Plaintiff was "yelling and banging on his cell door." Aff. Colon at 2, 13-16. Colon ordered Plaintiff to stop his disruptive behavior to no avail. *Id.* at 2. Plaintiff continued to yell and bang, called Colon an "infidel," and stated "Allah is with him." *Id.* Plaintiff then covered the window to his cell and Colon heard glass shatter and correctly surmised that Plaintiff had broken his cell light. *Id.; see also Id.* at 10-12 (requesting work order for replacement of seat and light fixture in inmate's cell due to inmate's destruction). Colon determined that Plaintiff had no medical condition that would prohibit the use of chemical agents, and received authorization from the warden to use chemical agents on Plaintiff in order to stop the disturbance and destruction Plaintiff was causing. *Id*. at 2.

Captain Smich approached Plaintiff's cell and warned Plaintiff that if he did not stop his behavior, chemical agents would be used. *Id.* Plaintiff still did not cease, so Smich returned to the cell with the chemical agents. *Id.* at 2, 6-7. By this point, Colon attests that Plaintiff had blocked his cell door with his mattress to barricade himself from the chemical spray and continued

to yell and bang. He also covered himself with his sheets and blanket to prevent direct contact with the spray. Pursuant to Captain Smich's directive, Defendant Colon applied chemical agents to Plaintiff, three times, in three, one-second bursts. *Id.* at 3. Plaintiff stopped his disruptive behavior after the third application of chemical agents. *Id.; see also* Mot. SJ at 7.

Defendant Colon avers in his Motion for Summary Judgment that the only specific allegations in the Complaint regarding his involvement in the alleged constitutional violation is that he provided Plaintiff with only hot water to rinse off the chemical agents. Mot. SJ at 7. Colon submits evidence establishing that he neither escorted Plaintiff to the showers, nor did he have control over the water temperature. *Id.* at 7-8. Officers Liszak and Haszinger handcuffed Plaintiff and brought him to the shower wing where he washed off the chemical agents. *Id.;* Aff. Colon at 3, 8-9 (noting Plaintiff's escort to shower after application of spray submitted by Officers Liszak and Haszinger). Although Plaintiff opines in his affidavit, Pl's Exh. A, that he told Colon that the shower water was too hot to remove the chemical agents, the record blatantly contradicts Plaintiff's contentions. The record evidences that Colon was not near the shower; and, therefore, Plaintiff could not have told Colon that the water was too hot to wash off the chemical agents. *See* Aff. Colon at 3-4, 8-9. The evidence submitted by both Plaintiff and Defendants establishes that the water inside the shower is controlled by means of a push-

button located inside the shower, which is operated by the inmate inside the shower. Pl's Exh. D; Aff. Colon at 3-4. The record establishes that the temperature of the water is regulated by the maintenance and facilities department. *Id.* at 3. Plaintiff was evaluated by the medical department and never told EMT Huffer that chemical agents remained on his skin. There were no chemical agents observed upon the body of Plaintiff and he indicated that he had no injuries. Aff. Hemphill at 2.

### 2. Evening Application of Chemical Agents

At 7:00 p.m. on October 20, 2005, it is undisputed that Sergeant Wise contacted Defendant Poccia, as the "Officer in Charge," because Plaintiff was creating a disturbance. *See* Aff. Poccia at 4-6 (including incident reports submitted by Officer Malicki and Sergeant Wise). The evidence of record, particularly the incident report from that night, establishes that Plaintiff was creating a disturbance in the cell by kicking his heater and yelling obscenities. Aff. Poccia at 5. After it was determined that Plaintiff had no medical condition prohibiting the use of chemical agents, Defendant Poccia received authorization from the duty warden to use chemical agents-OC. *Id.* Poccia retrieved the agents and again counseled Plaintiff to no avail; so, Poccia directed Officer Malicki to spray chemical agents on Plaintiff. *Id.* Malicki sprayed Plaintiff with the chemical agents using

three, one-second bursts of spray.[5] *Id.* Poccia again counseled Plaintiff to stop kicking the heater in his cell and to stop yelling obscenities, to which Plaintiff again yelled profanities at the officers. Poccia contacted the deputy warden who authorized the use of chemical agent CS. Chemical agent CS was retrieved and because Plaintiff was still acting disorderly, chemical agent CS was applied to Plaintiff. The spray was used three times for a one-second burst. Mot. SJ at 9; Aff. Poccia at 5. Defendant Poccia again counseled Plaintiff regarding his behavior; and, this time, Plaintiff ceased his disruptive behavior. *Id.* Plaintiff's contentions that Poccia "taunted" him during the spraying by saying "ewww that looks painful," fails to establish that the chemical agents were maliciously or sadistically applied that evening. *See* Mot. SJ at 10; Pl. Depo. at 150. Instead, assuming *arguendo* that Poccia did in fact make the statement, it seems that his statement was an accurate description of the fact. *See Scroggins v. Davis*, 346 Fed. Appx. 504, 506 (11th Cir. 2009)(finding that the officer's particular statement was an accurate description of the fact, not evidence of sadistic or malicious purpose).

The record evidences that Officers Moreno and Ferro immediately escorted Plaintiff to the shower wing where Plaintiff showered. *See generally* Aff. Poccia at 5, 7-8, 10. Plaintiff

---

[5]Officer Malicki applied the chemical agents because he had the requisite certification. Aff. Poccia at 5.

similarly alleges that Poccia had Plaintiff shower with "extremely hot" water thereby making it impossible for him to remove the chemical agents. Complaint at 19. The record evidences that Defendant Poccia was not near the shower wing at this time. As discussed above, the evidence the parties submitted establishes that the water inside the shower is controlled by a push-button, which is operated by the inmate inside the shower. Pl's Exh. D; Aff. Colon at 3-4. Morever, the temperature of the water is regulated by the Maintenance and Facilities Department. *Id.* at 3.

Plaintiff then received a post-use-of-force examination by the Medical Department. Aff. Poccia at 5, 7-8. The medical records evidence that by the time Plaintiff had his medical evaluation, he had rinsed off the chemical agents. Aff. Kovach. The medical records report that Plaintiff experienced redness in his face and around his eyes, but had no blistering. *Id.* Additionally, following the use of chemical agents, Plaintiff reported no other ailments to the Medical Department. *Id.* The evidence also establishes that at no time was Plaintiff returned to a cell contaminated with the remains of the chemical agents. Aff. Colon at 4; Aff. Poccia at 5.

Based on the record in this case, the Court finds the Defendants are entitled to the entry of summary judgment as a matter of law. The Defendants utilized chemical agents to quell Plaintiff's destructive and disruptive actions, which included

yelling in his cell, kicking his heater, refusing to comply with the officers' orders, yelling profanities at the officers, and breaking a bench and a light fixture located in his cell.  The record shows that the Defendants used only the amount of chemical agents necessary to gain control of Plaintiff and did not do so for purposes of malicious or sadistic motives.  Because the Court finds no Eighth Amendment violation, the Court need not address whether the Defendants are entitled to qualified immunity in this case.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. #105) is **GRANTED**.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this 26th day of August, 2010.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record